Good morning. My name is Whitney Bernstein and I represent the appellant Francisco Ochoa-Oregel. The only disputed issue before this Court is whether Mr. Ochoa-Oregel's 2011 expedited removal order was fundamentally unfair. It was. Under any standard of review, the District Court erred when it made factual findings that were incompatible with the record before it, without holding an evidentiary hearing, without taking any evidence, and without hearing any argument. Because the proceedings were not translated for Mr. Ochoa-Oregel as required by the statute's governing expedited removals, he suffered a due process violation in the form of lacking notice and an opportunity to respond to the charges against him. What happened in 2009-2010? Can you help me understand what was the intervening sort of conviction that occurred? You're challenging his original removal. He was an LPR, correct? That is correct. And 2008 for a domestic violence misdemeanor conviction, I believe, that was later determined not to be a crime eligible to allow his removal, is that correct? That's correct, Your Honor. And I noticed that the attorney, your colleague on the other side, argued in their briefs that he would have been removed anyway because of something that happened in 2009. And so can you tell me, I think it was a conviction for cocaine? It was a conviction, excuse me, Your Honor, it was a conviction for possession of cocaine with intent to sell under California Penal Code 11351.5. We do concede that that would be an aggravated felony. He sustained this conviction in 2009, but this doesn't preclude removal. This doesn't preclude relief. There are various forms of relief that are still available to aggravated felons, including, for example, CAT under the Convention Against Torture. There are S visas, T visas, U visas. We don't know for a fact that Mr. Ochoa would have even been placed into removal proceedings following that 2009 state conviction. And moreover, he may have had the ability to withdraw that plea, that guilty plea, on the basis perhaps of an inadequate advisal as to the immigration consequences with an Infective Assistance of Counsel claim. So that was never adjudicated, he was never adjudicated on that? He was not, Your Honor. There's a removal order from 2008, which the government concedes is problematic. And then there's a removal order from 2011, an expedited removal that doesn't allege that ground of removability. And his removal, the one that you're challenging here, the 2011, was it based on the cocaine conviction or was it based on this 2008 removal that basically, or the basis for it was not valid? Our contention is that it did involve and implicate the 2008 invalid removal because but for the 2008 removal proceedings where Mr. Ochoa lost his LPR status, which he had held for 29 years since he was 29 days old, but for that loss of status, he never would have been subject to expedited removal proceedings because the statute governing expedited removal proceedings makes very clear that they are only permissible for individuals who do not have any status in the United States. So when he says he didn't know that his LPR status had been affected when he went over to across the border and came back, I'm trying to understand what happened there. Can you fill me in on why he wouldn't have known if he'd been convicted of a conviction for cocaine? He was never removed on the basis of his conviction for cocaine. Mr. Ochoa was ordered removed in 2008 on the basis of the misdemeanor domestic violence conviction, which is categorically overbroad and indivisible. That order of removal was never effectuated on him until 2010. And so in 2010 when he was removed, there first of all were no warnings accompanying his removal as there usually are. The excerpts of record at page 92 make clear that he simply was deported and there's no accompanying warnings to the deported alien or a time bar associated. But wasn't he removed in 2010 and so wouldn't if he had some notice that he had been, his LPR status was no longer? Your Honor, he submitted a declaration that explained that though he did know he had been removed, he did not know that that invalidated his LPR status. If we look at excerpts of record at page 154, it's the I-213 that accompanied his expedited removal in May of 2011. It's the officer's notations of their interview with him. And that makes, what can be deduced from that form is that Mr. Ochoa says that he returned to the Otay Mesa Port of Entry on his LPR card, was admitted into the country, and returned to his home in Downing, California. That on May 21st of 2011, he only went down to Tijuana with his girlfriend to get tacos and planned to return to Downing, California where he'd been residing. So he wasn't on with his immigration status, particularly in light of the fact he wasn't at the proceeding where it occurred. The 2008 proceeding was in absentia. He wasn't there. We know he'd never been in contact with the attorney that represented him. And in fact, it seems as though presenting his card had been accepted by immigration. And so he did find, he was under the impression that his status was valid. So you said his card was accepted previously? That's the inference I think that can be drawn from excerpts of record page 154. He does explain that he doesn't recall the precise date, but that he came to the Otay Mesa Port of Entry, presented his LPR card that was facially valid, legally issued, and unexpired, and that he returned to his residency in Downing, California shortly after his removal. Tell us why you think that Judge Bonita's misinterpreted or misread 8 CFR section 1.2. Section 1.2, Your Honor. Right. That's the statute or the regulation that says lawfully admitted for permanent residence means the status of having been lawfully accorded the privilege of residing permanently in the United States as an immigrant in accordance with the immigration laws, such status not having changed. Such status terminates upon entry of a final administrative order of exclusion, deportation, or removal. My understanding is Judge Bonita's looked at that regulation and said he was removed. End of analysis. Even if that was the district court's analysis, the district's court still needs to contend with the fact that the 2011 removal is independently invalid regardless of any argument that there was. Judge Bonita's did make factual findings in that regard that are completely inconsistent with the record. For example, in holding that Mr. Ochoa may not have even needed competent translation services, the district court stated that, quote, even his own signed declaration in this case is in English. And Mr. Ochoa's declaration, which appears in the excerpts of record at page, well, excerpts of record page 73, is 29 paragraphs and 3 pages. And the fourth and final page of that declaration is accompanied by that of a Spanish language interpreter explaining that the entire declaration was translated for Mr. Ochoa before he signed it. Also, there had been a Spanish interpreter utilized and needed throughout the case. The docket makes clear in the third entry at ER 263 that a Spanish interpreter was needed. And in fact, one had been utilized at all seven hearings in this case. Counsel, Judge Gould, if I could interject a question. Yes, Your Honor. I'm not, at least the way I'm looking at this case, I might be oversimplifying and missing something. But I'm not thinking that we really need to decide the issue you're arguing right now about the interpreter. Let me just ask you a few questions. First of all, when he was removed in 2008 because of the domestic violence misdemeanor, does everyone agree, you and the government, that that wasn't of a valid basis to remove him? Yes, Your Honor. Okay, so that's agreed. Then my second question is, if he's removed improperly in 2008, would I be correct in thinking that his LPR status is not terminated, notwithstanding the language in the regulation read by Judge Christensen? Because that is contemplating someone being removed legally terminates the status. But I thought your position was that if someone was removed illegally, it would not terminate his LPR status. That's correct, Your Honor. And I think that there is case law in point as well that implies the implicit holding is that there has to be some backup right to restore an alien status if they are invalidly deprived of that status. Okay, so if that's correct, then it seems to me that we would never have to reach your argument about Spanish interpreter at the expedited removal hearing because you can't use that expedited procedure if he's still an LPR. That's correct, Your Honor. We believe that subjecting him to expedited removal proceedings laundered the due process violation from 2008. But I believe that there are two bases upon which this Court should vacate in this case because there's no predicate removal, either on the basis the Court is describing right now or because of the independent invalidity of the 2011 removal. Okay, thank you. I'm nearly out of time. I'd like to reserve if the Court has no further questions. Thank you. Good morning. May it please the Court, Nicole Reese Fox of the United States. I'd like to begin with Judge Gould's series of questions because I think that they are a bit oversimplified. First, Judge Gould, you asked whether the 2008 removal, whether we all agreed it was not a valid removal. That's not true. At the time of the removal order, the modified categorical approach that this Court had adopted would have deemed that conviction a removable offense. It's only later developments in this Court's law that rendered that offense no longer a removable offense. So it's not true that at the time it was invalid. What we do concede is that that removal order is not sufficient. We can't rely solely on that removal order for the purposes of a 1326 prosecution. But what this Court said in Aguilera-Rios in footnote three is that even where you have a removal order that is invalid, that cannot be the basis for a 1326 prosecution, that doesn't mean that you undo that removal order, only that it bars that prosecution. So the only way that that 2008 removal order could have been invalidated would be had Mr. Ochoa moved to reopen the proceedings or sought some other type of determination to be an invalid basis for removal. And Mr. Ochoa did not use that procedure. Rather, he engaged in the self-help of returning and saying that removal order was invalid, here's my LPR card. As to alone, it cannot be used. But what else was the basis for the 2011 removal? Oh, Your Honor, I said alone it can't be the basis for a 1326 prosecution. So the 1326 D statute allows the defendant to collaterally attack the removal order. Here we have two removal orders. And we're not basing our 1326 prosecution on the 2008 removal order, but on the 2011 removal order, which is independent. And this Court said in Alarcon-Tapia that where the second removal order is not reinstating the prior removal order, it's an independent basis for removal. And where is it noted that you're basing it on the 2011? You're saying right now you're not basing the 1326 on the 2008 removal order? That's correct. Where is that noted? Well, Your Honor, the indictment does not specify the removal order. It just specifies that Mr. Ochoa was removed after a certain date. And I'm actually, I apologize, I'm not sure at the actual further proceedings in this case, but I'm fairly confident that because we had litigated this issue and it was clear at the 1326 D stage that we were relying on that 2011 order, that the happened before the conviction. And it was clear the government briefed this and said the 2008 order was valid at the time. However, we're not going to rely on that. We're relying on the 2011 removal order, which is independently valid. And that's where we litigated the issue of the alleged due process defects in the 2011 removal order. I thought your whole argument was based on the 2008 order. Oh, I'm sorry, Judge Gould. Go ahead. So I was just going to say the 2011 order is premised on his being no longer an LPR. Yes, Your Honor. Because of the first removal, which our later law would say was defective. Yes, Your Honor. But in Alarcon Tapia and several other briefs, this court stated that even though it's a but-for cause of the second removal order, that doesn't infect the validity of the removal order. The second removal order didn't mention that he had a prior order of removal. The notice on the second removal order simply stated that he appeared at the border without valid entry documents. And it's true that there's no dispute here that he never tried to correct his supposedly invalid removal in 2008. He never sought to have the proceedings reopened and his LPR status reinstated. But he never knew, according to what we just heard. He never knew. So how would he know to reopen if he never knew? Your Honor, he knew that he was removed. After he served his prison, his two-year prison term, he was walked to the border. There's documents that show he knew he was removed. He knew he was removed. Did he know that he no longer was an LPR? So in his declaration, he stated he didn't. But this court said in United States v. Reina Tapia that any reasonable person would know that deportation from the United States means that he or she is no longer permitted to live here. And even if he didn't know that his LPR card was invalid, that doesn't bear on the validity of using the expedited removal proceedings. It might bear on the plausibility finding, the second prong, the prejudice inquiry as to whether he used deliberate fraud. And I'd be happy to address that. But his subjective knowledge about whether he was valid, whether his LPR card is valid, does not make the 2011 expedited removal proceeding per se invalid. And I would also note that had he been an LPR, he would have gone through immigration proceedings in which the immigration judge would have said you're an aggravated felon. You are not eligible for relief. And this court has said, although there are those very rare exceptions that appellant's counsel noted, that by and large, an aggravated felon is ineligible for relief. So in fact, it would have been the same result even if he had been treated as an LPR. And because it's his burden on the 1326D motion to show prejudice, there is no prejudice for having treated him as an arriving alien without status. You keep referring, I'm sorry, to Alicantopia. I thought that was unpublished. Is it published or unpublished? It's an unpublished case, Your Honor, but it does have reasoning. It's not the type of unpublished where it's sort of very briefly has the holding without reasoning. And this court has held in at least four unpublished cases that the second removal order is independent. I think that although there's not a published opinion, it makes good sense. There are procedures for reopening an invalid removal order, petitioning for review, and that is the way that you can invalidate a basis for a removal order is no longer your position that it's still valid, even though it wouldn't be valid because the basis for the removal... That's not my argument, Your Honor. Help me understand what you're saying. Sure. Although the 2008 removal order can't be used as the basis for a 1326 prosecution, and even though it was a but-for cause of Mr. Ochoa being placed in expedited removal proceedings in 2011, the 2011 proceedings was not a reinstatement. There is a procedure where the immigration authorities can reinstate a prior removal order. That's not what they did. But why isn't the 2011 expedited removal proceeding not tainted by the 2008 removal proceeding? Because it was not a reinstatement. It was its own proceeding. And further, because Mr. Ochoa has to show both a due process violation and prejudice, even if this said that the 2008 removal order tainted the proceedings, Mr. Ochoa cannot show prejudice because he cannot show in light of his aggravated felony that he would have been eligible for relief as an LPR or as an arriving alien without documentation. Help me make sure I understand. Was 2011 an expedited removal order? Yes, Your Honor. Okay, so I guess do you agree or disagree that the invalid the 2011 expedited removal order because LPRs are not subject to expedited removal? That's my understanding. Yes, Your Honor. My argument is twofold. You have a situation where he showed up in 2011. I understand. We'll deal with the other conviction in just a minute. But here he was, and he was subject to an expedited removal order. And yet the underlying basis for the 2008, you know, order that said he was no longer an LPR where he wasn't even there at the hearing is no longer valid. So it seems like there's some due process implications. And I understand that it does feel unfair that there's a but-for connection. But that is not enough to say that the order is invalid. And even if this court were to find a due process violation, let's take the due process violation off the table. Let's say that the court finds there's a due process violation in using in calling him a non-LPR and subjecting him to the expedited removal proceeding. He would still need to show that were he treated as an LPR, he would have been allowed to remain in the United States. And there's just no way that he can make that showing in light of the aggravated felony conviction. In addition, the Aguilera-Rios is the case that holds that you apply present law retroactively to determine the validity of a removal order. I'm sorry, I see I'm out of time. May I just make this further point? Thank you. Aguilera-Rios is the case where this court held that for purposes of a 1326 prosecution, you can retroactively apply current law to determine whether a removal order that was valid at the time, which all parties, I think, agree that the 2008 removal order under the law as it stood was fine. So when later developments in the law make that removal order invalid, if Aguilera-Rios, if it were true that that later development in the law automatically wiped out the removal and made the person magically LPR again, Aguilera-Rios would have been, wouldn't have needed to say in footnote three that the invalidity of the first order that although it bars prosecution, it does not affect the finality of that prior proceeding. No, your honor, that was a published opinion. So what does the petitioner need to show? Is it plausible relief or that he would be granted to stay? Is that my understanding correct on that? Yes, your honor. The prejudice standard is that he had plausible grounds for relief from removal. And although there is the convention against torture and those other very unusual types of relief that an LPR could get, with an aggravated felony, all the sort of normal types of relief withholding of removal, which Mr. Ochoa did receive in 2003 before he had the aggravated felony conviction, all of those types of relief are barred by the aggravated felony conviction. And so even if you say that it's a due process violation to treat him as an arriving alien without documentation, as a non-LPR, and he should have been placed in a normal removal proceeding with, in front of an IJ, he cannot show that it's plausible he would have received relief. I have one more question. I know you're over time, but you talked about Reina Tapia. Yes, your honor. Then that supports your position. It doesn't seem that the defendant challenged the validity of his deportation in that case. So I just want to see how it directly answers the question before us involving a challenge to validity to a prior deportation. Your honor, I cited Reina Tapia just to sort of undermine the idea that an LPR who's been removed, nonetheless think, can subjectively think that the LPR card is valid. And that only goes to the prejudice inquiry when we're talking about the expedited removal. So we argued that in part that it was not plausible that he would have been granted relief in the expedited removal proceeding because he had attempted to enter with fraud. And in response to that, in his declaration, a defense counsel argued, well, he didn't know that his LPR card was invalid. So that argument only goes to sort of his subjective understanding. But I don't think that there's any case that holds that an LPR status, if later law says that that removal should not have happened. If the modified categorical approach happens again, is amended again, and a prior removal order is called into question, there is no case, no statute, no regulation that provides for the reinstatement of LPR status without some action by the alien. And here there was no action whatsoever except for the self-help of crossing the border and saying, I'm here, I have an LPR card, despite the fact that you previously walked me across the border and told me not to come back, here I am. And that is not enough under any statute or regulation to allow the person to come back in the country as an LPR. Somebody else have any questions? I'm sorry, I do. Because I'm confused in terms of what the government's position is here this morning. So let me just sort of walk you through this step by step. My understanding is that you are arguing that Ochoa lost his LPR status in 2008 upon entry of a final administrative order of deportation. Yes, Your Honor, correct. Okay. And that it's the government's view that the entry of that order stripped Mr. Ochoa of his LPR status, whether or not that order was valid or proper. Is that correct? Not quite, Your Honor, because the order was valid at the time it was entered. Okay. So... I don't believe that's disputed because under the modified categorical approach that applied at the time, his conviction was for a domestic violence offense because the modified categorical approach at the time instructed the court to look at the conviction documents and there was no inquiry as to whether the statute was indivisible. But he never got to challenge that because he wasn't there. There are proceedings to reopen and in absentia... I know. I just answer my question is that really didn't get fully litigated because he wasn't there. He did have counsel and the divisibility cases had not occurred yet. So at the time of his removal order, under the case law, the binding case law from this court, he was... his conviction qualified and it was a removable offense. But could he have challenged it? His attorney could have and once he was removed, he could have sought to reopen the in absentia removal order and challenged it that way. I interrupted. Go ahead. So what was the basis for Judge Benitez? What was the basis for his decision? Judge Benitez relied on the 2011 removal order. Excuse me. So Judge Benitez essentially put aside the 2008 removal order. He said United States v. Alarcon Tapia is persuasive. This is at ER 169. So he essentially at ER 168... So he relied on an unpublished opinion. And the sort of common sense understanding that once... just because somebody loses their LPR status doesn't mean... and later the law changes, the LPR status doesn't somehow get reinstated without any proceedings sort of challenging that removal order. Here we're in a prosecution where the defendant is entitled to collaterally attack his deportation order and so we're not in a proceeding where the validity of that removal order can be directly attacked. We're talking about a collateral attack for the purposes of a subsequent prosecution.  Okay. Thank you. Thank you. I'll give you some extra time here since we went along with Ms. Reece... Sorry. Yeah, Ms. Reece Fox. Thank you, Your Honor. So what about the footnote three in Aguilar-Rios? Your Honor, we don't agree that the 2008 removal proceeding was even valid at the time that it occurred for two main reasons. One, the immigration judge there knew, based on what he had said at prior proceedings, he knew that a deeper inquiry was required before he relied upon that statute of conviction to deprive Mr. Ochoa in absentia of his LPR status that he had held for 29 years. Further, that proceedings, or the series of hearings where his attorney attempted to withdraw twice and explained he had never once communicated with Mr. Ochoa, did not follow the proper proceedings to go in absentia, to deprive someone of status they've held for nearly three decades in absentia. So we don't contend as a preliminary matter that the 2000... We don't concede as a preliminary matter that the 2008 removal proceeding was even valid at the time that it occurred. Moreover, its reliance on a statute that is now indisputably, categorically overbroad and indivisible makes the loss of that status a due process violation. But why shouldn't he have gone back to, or tried to reopen the proceedings once he knew that he'd been removed? Wasn't that sufficient notice to tell him something was amiss? He was never on notice that that was necessary. His attorney had never communicated with him. He was not at that hearing. Well, but he was deported, removed after his conviction. He was removed in 2010. And by that point, he had sustained other misdemeanor convictions, as well as the felony conviction that the government is relying upon to claim there's no plausible prejudice that he could have received, which is also factually incorrect. But he was removed over two years after the entry of the 2008 order, without any warnings, without any explanation. And he wasn't on notice that he was removed on what basis, and that this invalidated his LPR card, or that he needed to reopen proceedings. What we know is that he says he came to the port of entry, was admitted, returned to his residency in Downing, resumed his life. And so I don't believe he was on any notice that he needed to reopen those proceedings. But what we're arguing is not that, in fact, his status should be restored to him. We're just arguing that the due process violations in 2008, and again in 2011, prevent the government from having a valid predicate removal order to base its illegal re-entry prosecution. And so we're not asking this court to make a finding or a holding that any time a hearing, that a due process violation occurs in a hearing, that a person, therefore, can never be, can never be validly removed from the country thereafter. But here, on these specific facts, the due process violation in 2008 did directly impact what happened in 2011, because he wasn't, he should never have been subject to those proceedings. And even if, as the government is claiming, as I understand, that there was no, even assuming a due process violation that invalidates the 2011, there's no prejudice that he can show at this time, he was in fact eligible for relief from both the expedited removal that was issued in 2011, despite his aggravated felony, and in the record at page 86 is an example of an individual who had been convicted of a 1324 alien smuggling offense, which is almost always an aggravated felony, and had still received withdrawal of application. But Mr. Ochoa also would have had, would have been eligible for relief from a removal order entered, even if he had been treated as an LPR at the time in 2011. He could have had withdrawal of application, or the various other forms of relief from removal that aggravated felonies are not a bar to. Any questions? No. No questions here. All right, thank you very much for your arguments. You set a high bar for all the people in the audience here today. Thank you, they're excellent arguments and very helpful. Thank you very much. The matter of United States versus Francisco Ochoa Oregal is submitted. Thank you.
judges: Gould, Murguia, Christensen